FILED
CLERK, U.S. DISTRICT COURT
JUL 25 2008
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDY L. AGUILAR,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. ED CV 07-826-PJW<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the administrative law judge ("ALJ") erred when he: 1) concluded that her musculoskeletal impairments were not severe, 2) failed to develop the record, and 3) concluded that Plaintiff could work as a teacher. For the reasons discussed below, the Agency's decision is affirmed.

Plaintiff was born in 1950, and is 57 years old. (Administrative Record ("AR") 54.) She has a graduate degree in psychology from the Philippines. (AR 65.) Plaintiff taught English and social studies in

Belize between 1991 and 1996. (AR 61, 65.) Thereafter, she came to the United States but did not work because she did not have a work permit. (AR 65.) Plaintiff married in 1999, after which she helped her husband, who worked as a nurse's assistant. (AR 61, 65.) Her husband died in 2004. (AR 55.)

Plaintiff applied for social security benefits in December 2004, alleging that she was unable to work because of a hearing impairment. (AR 60.) After her claim was denied initially, she sought reconsideration. On reconsideration, she alleged that she was suffering from pain in her back. (AR 56.) Her claim was denied on reconsideration. She then asked for and was granted a hearing before an ALJ. Plaintiff appeared with counsel and testified at the hearing. (AR 127-37.) Following the hearing, the ALJ issued a decision denying her claim. He found, among other things, that Plaintiff's musculoskeletal pain did not amount to a severe impairment. (AR 11.) He dismissed her allegations about depression. (AR 11.) Ultimately, he determined that Plaintiff could return to her job as a school teacher.

In her first claim of error, Plaintiff argues that the ALJ erred in concluding that her musculoskeletal (back, neck, hips, and ankles) pain was not a severe impairment. This claim is without merit.

A consulting doctor who examined Plaintiff in January 2005 in connection with this case concluded that she had no problems with her back, neck, hips, or ankles. (AR 99-103.) In fact, it appears that Plaintiff did not even mention pain in these areas to the doctor. (AR 99.) The ALJ relied in part on the consulting doctor's report (as

well as a reviewing doctor's report addressing the consulting doctor's report) to conclude that Plaintiff's musculoskeletal impairments were not severe. (AR 11.)

Plaintiff concedes that she did not mention this pain to the consulting doctor who examined her in January 2005, but explains that she did not experience it until March 2005, after he had examined her. (Joint Stip. at 3-4.) She points out that, when she did start experiencing the pain, she went to Arrowhead Regional Medical Center for treatment. (Joint Stip. at 3-4.) She argues that the ALJ's failure to order a consultative examination in light of the records from Arrowhead Regional was error.

The records show that Plaintiff went to the hospital twice in the Spring of 2005. Her first visit was in April 2005, to treat an acute sinusitis attack. (AR 126.) It does not appear anywhere in the hospital note from that April 2005 visit that Plaintiff mentioned to her doctor that she was suffering from back, neck, hip, or ankle pain. (AR 126.) During a May 2005 visit, Plaintiff did report that she was suffering from chronic lower back pain, and she was referred for x-rays. (AR 123-25.) But the records from that visit create more confusion than they resolve. For example, though Plaintiff reported to her doctor that she was unable to work due to pain in her lower back, she claimed that the pain was the result of a fall in a river four years earlier and that she had broken the transverse process on one of her vertebra at the time. (AR 125.) She also reported that she had had pain in her neck and her upper back for the last two years and that she had pain in both ankles that was intermittent. (AR 125.)

Thus, these records do not really support Plaintiff's claim that the ALJ misinterpreted the evidence or that he erred by not ordering

another examination after May 2005. They show that, according to Plaintiff, her pain stemmed from a 2001 fall and another injury in 2003, prior to her examination by the consulting doctor in January 2005. Presumably, the consulting doctor would have been able to analyze these claims in January 2005, when he examined Plaintiff, but he did not because Plaintiff never told him about them.

The Court notes that Plaintiff's arguments are not only undermined by the records that are in the record, but, also, by the records that are not in the record. There are no records relating to her slip and fall in 2001 or her later complaints in 2003. Nor are there records relating to treatment of her musculoskeletal condition after her visit to Arrowhead Regional in May 2005. From May 2005, when Plaintiff first reported her condition to her doctor, until December 2006, when the ALJ issued his decision, Plaintiff, apparently, received no treatment for her allegedly debilitating condition. None. There is no record that she ever followed up on the doctor's May 2005 order to get x-rays. Nor is there any evidence that she went to see another doctor to be treated for the pain stemming from these conditions. This evidence, or lack of it, suggests that Plaintiff's ailments did not amount to a severe impairment and that the ALJ did not err in failing to order another consultative examination to explore them.

The Court has not overlooked the fact that Plaintiff reported to the Agency that she did not have money to see a doctor. (AR 70.) Certainly, the Agency may not penalize Plaintiff for having failed to see a doctor that she could not afford. But the record does not support an argument that her lack of resources caused her to forgo medical care. She was able to obtain treatment at Arrowhead Regional

for acute sinusitis. Nothing suggests that the hospital would not also treat her for her back complaints, regardless of her ability, or inability, to pay. In fact, the record suggests the opposite; it shows that her doctor ordered x-rays to evaluate her complaints and Plaintiff simply failed to follow up.

In short, Plaintiff has not established that the ALJ erred in evaluating her condition, developing the record, or ordering further examinations. For this reason, her claims in ground one are rejected.

Plaintiff next argues that the ALJ failed to properly develop the record. (Joint Stip. at 6-7.) She contends that he should have ordered an additional consultative examination of her back, neck, ankle, and hips following her complaints in May 2005. She also argues that he should have ordered a psychiatric examination after she reported to her doctor in May 2005 that she suffered from depression. (Joint Stip. at 6.) Again, the Court disagrees.

As explained above, the ALJ was not required to order a further consultative examination for Plaintiff's physical ailments because Plaintiff told a doctor one time in May 2005 that she suffered from pain as a result of incidents that occurred in 2001 and 2003; the January 2005 examination by the consultative examiner was sufficient to explore these ailments. As to Plaintiff's claims regarding depression, the Court finds here as well that the ALJ was not required to order a psychiatric examination as a result of Plaintiff's reported depression. Like her allegations relating to musculoskeletal pain, there was virtually no evidence that she suffered from depression. (AR at 123-26.) The first indication that she was having any trouble at all was on April 14, 2005--five months after her husband died--when she went to Arrowhead Regional for treatment of acute sinusitis. (AR

126.) At that time, fourth on her list of complaints was that she was suffering from "grief." (AR 126.) One month later she went to Arrowhead Regional again, complaining of back pain, and reported to her doctor that she was suffering from depression. (AR 124.) She explained at that time that her husband had died recently. (AR 124.)

Like her physical complaints, Plaintiff never received treatment for her psychiatric complaints and there is nothing in this record to suggest that her grief over the loss of her husband arose to the level of a severe mental impairment. Instead, the record shows that Plaintiff suffered grief after her husband died in November 2004, that lasted through her testimony in September 2006. It appears that everyone associated with this case interpreted her condition as temporal and due to the death of her husband. In fact, at the administrative hearing, the ALJ noted that Plaintiff had not alleged a mental disorder and that the record did not contain any treatment notes from a mental health care provider. (AR 131.) Plaintiff's counsel agreed with the ALJ on the record that there was no claim for any mental impairment. (AR 131.) Clearly, Plaintiff's counsel was aware of what was in the medical records, and, after reviewing them, he too must have concluded that there was no evidence supporting a claim for a mental impairment. Counsel cannot argue now that, in fact, the record suggested that Plaintiff had a mental impairment and that the ALJ erred by not developing the evidence relating to it.

In her final claim for relief, Plaintiff alleges that the ALJ erred when he concluded at step four that she was capable of performing her past work as a high school teacher. (Joint Stip. at 8-10.) She argues that she is unable to teach because: 1) her teaching experience in Belize would not transfer to a teaching job in the

United States, 2) English is her second language, and 3) she does not have a California teaching certificate. None of these contentions supports reversal.

Under Social Security Ruling 82-40, the ALJ was required to consider all previous jobs that Plaintiff performed in determining whether she was capable of working. This includes jobs in a foreign country. (SSR 82-40.) Plaintiff taught high school in Belize. (AR 61.) This suggests that she would be able to teach high school in the United States. Further, it was reasonable for the ALJ to assume that Plaintiff's teaching experience in Belize would carry over to the United States--despite any language barriers--especially since she taught English in Belize.

As to her argument that the ALJ erred when he failed to consider whether she would be required to have a teaching credential in order to teach in California, the Court disagrees. The inquiry by the ALJ was not whether Plaintiff could work in California, but whether she could work in the United States. *Waters v. Gardner*, 452 F.2d 855, 857 & n.6 (9th Cir. 1971). That is not dependent on a teaching credential from the State of California. Because there was substantial evidence here to conclude that Plaintiff would be able to teach in the United

States, the ALJ's determination that she could will not be overturned. For these reasons the decision of the ALJ that Plaintiff was not disabled is affirmed.

IT IS SO ORDERED.

Dated: July 23, 2008.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\AGUILAR, G 826\Memo.wpd